IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:11-CV-00296-FL

| | |
|---|---|
| VEOLIA WATER SOLUTIONS & TECHNOLOGIES SUPPORT, <br><br> Plaintiff/Counterclaim Defendant, <br><br> v. <br><br> SIEMENS INDUSTRY, INC., <br><br> Defendant/Counterclaimant. | MEMORANDUM OPINION |

Hearing was held in this matter, on August 22, 2012, in which this court addressed various pending motions, including plaintiff's motion to dismiss counterclaims and to strike affirmative defenses (DE #25). By oral order at said hearing the court granted in part and denied in part the motion, (DE #89), noting that a written opinion would follow specifically addressing reasons for dismissal of defendant's third counterclaim alleging unfair and deceptive trade practices under North Carolina General Statute § 75-1.1. As anticipated, this memorandum opinion now sets forth the reasons for the court's decision to dismiss defendant's third counterclaim.

## BACKGROUND

Plaintiff filed suit in June 2011, and an amended complaint in July 2011, alleging patent infringement by defendant and seeking monetary damages and injunctive relief to prevent continuing infringement. Plaintiff claims that defendant markets a wastewater treatment filter (the Forty-X disc filter) that infringes two patents owned by plaintiff (the '805 Patent and the '508 Patent). In December 2011, defendant filed an answer and counterclaims, including the third counterclaim at issue here, in which defendant asserts that plaintiff violated the Unfair and

Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1, by filing its patent suit in bad faith. See Answer and Counterclaims ¶¶ 40-41.[1] In particular defendant alleges that plaintiff filed suit "with the knowledge that Siemens possesses a covenant not to sue against these patents as a result of the 2004 Stock Purchase Agreement between United States Filter Corporation and Siemens Corporation." Id. ¶40. Defendant also alleges that plaintiff brought suit "with the knowledge that these patents are invalid, unenforceable, and/or not infringed by Siemens' products, and with the intent to injure Siemens." Id. ¶ 41. The aforesaid actions by plaintiff allegedly "offend established public policy and are oppressive, unscrupulous and substantially injurious to consumers." Id. ¶ 42.

On February 6, 2012, plaintiff moved to dismiss defendant's third counterclaim for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b). Plaintiff argues that this counterclaim should be dismissed because defendant has not alleged any egregious or aggravating circumstances, and a breach of contract cannot form the basis of a UDTPA claim. See Mem. in Sup. Mot. Dismiss at 4-8. Plaintiff also argues that the filing of a lawsuit cannot be the basis for a UDTPA claim, based on the Noerr-Pennington doctrine. Id. In response, defendant argues that institution of litigation may be the basis for a UDTPA claim where the lawsuit is a sham to cover an attempt to interfere with business relationships of a competitor. Def's Mem. in Opp. at 5. Defendant contends that because plaintiff knew of a covenant sue between Siemens Corporation and plaintiff's predecessor, then the suit is a sham and plaintiff's initiation of suit violates the UDTPA. Id. at 6-7.

## DISCUSSION

---

[1] In May 2012, defendant filed an amended answer and counterclaims, re-asserting its UDTPA counterclaim in identical form, and asserting several new counterclaims and affirmative defenses, which are not at issue here.

A. Standard of Review

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted is to eliminate claims that are factually or legally insufficient. Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). To survive a motion to dismiss, a pleading must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). In evaluating whether a counterclaim is stated, "a court accepts all well-pled facts as true and construes these facts in the light most favorable" to the claimant, but does not consider "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009); see Stephen Dilger, Inc. v. Meads, 5:11-CV-42-FL, 2011 WL 1882512, at *12-14 (E.D.N.C. May 17, 2011) (applying Iqbal, Twombly and Nemet to a motion to dismiss counterclaims). Nor must the court accept "unwarranted inferences, unreasonable conclusions, or arguments." Id.

B. Analysis

To state a claim under the UDTPA, a claimant must allege (1) an unfair or deceptive act or practice, (2) in or affecting commerce, (3) that proximately caused actual injury to plaintiff. See Dalton v. Camp, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001). "A practice is unfair if it is unethical and unscrupulous, and it is deceptive if it has a tendency to deceive." Id. "'North Carolina courts have repeatedly held that a mere breach of contract, even if intentional,' does not rise to an unfair or deceptive trade practice." Kelly v. Georgia-Pacific LLC, 671 F. Supp. 2d 785, 799 (E.D.N.C. 2009) (quoting Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 347 (4th

3

Cir. 1998)).[2] Rather, a party must allege "substantial aggravating circumstances" to support a claim under the UDTPA. Broussard, 155 F.3d at 347 (citations omitted). Courts "relegate claims regarding the existence of an agreement, the terms contained in an agreement, and the interpretation of an agreement to the arena of contract law." Id. (citations omitted).

Applying these principles in this case, defendant has failed to plead a valid UDTPA claim. Defendant first alleges that plaintiff "unlawfully and oppressively" brought suit against defendant, alleging patent infringement, "with the knowledge that Siemens possesses a covenant not to sue against these patents as a result of the 2004 Stock Purchase Agreement between United States Filter Corporation and Siemens Corporation." Answer and Counterclaims ¶ 40. As an initial matter, it is not reasonable to infer without more facts alleged that a covenant between two corporations not party to the present suit bars the present suit by Veolia. But, even if the covenant could be construed to apply to Veolia, liability under this counterclaim turns upon "the existence of an agreement, the terms contained in an agreement, and the interpretation of an agreement." Broussard, 155 F.3d at 347. As such, this claim may not be brought under the UDTPA, but rather only as a breach of contract claim. See id.; Kelly v. Georgia-Pacific LLC, 671 F.Supp.2d at 799. Further, where defendant has not alleged any "substantial aggravating circumstances" concerning Veolia's actions with respect to the covenant not to sue, its UDTPA counterclaim premised upon the existence of a covenant not to sue must be dismissed. Broussard, 155 F.3d at 347.

Defendant also alleges that plaintiff should be liable because it brought suit in bad faith,

---

[2] The Fourth Circuit has warned against allowing parties to "attempt . . . to manufacture a tort dispute" out of such claims. See Strum v. Exxon Co., 15 F.3d 327, 329 (4th Cir. 1994). That court has identified North Carolina's UDTPA as a "boilerplate claim in most every complaint based on a commercial or consumer transaction in North Carolina," frequently asserted in an effort to obtain the extraordinary damages authorized by the act. See Broussard, 155 F.3d at 347.

"with the knowledge that [the] patents are invalid, unenforceable, and/or not infringed by Siemens' products, and with the intent to injure Siemens." Answer and Counterclaims ¶ 41. Plaintiff argues that defendant's UDTPA claim arising from this allegation is barred under the Noerr-Pennington doctrine. Mem. in Sup. Mot. to Dismiss at 5-8. The Noerr-Pennington doctrine originated from two Supreme Court cases, E. R. R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961), and United Mine Workers of Am. v. Pennington, 381 U.S. 657 (1965), decided in the context of federal anti-trust law.[3] Under this doctrine, as interpreted by the Supreme Court, a plaintiff may be held liable for bringing a lawsuit against a competitor only if the litigation is a "sham," that is "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 60 (1993). Applying this rule in the context of a UDTPA claim, North Carolina courts have held that "[t]he institution of a lawsuit may be the basis for an unfair trade practices claim if the lawsuit is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor." United States v. Ward, 618 F.Supp. 884, 907 (E.D.N.C.1985) (citing Noerr, 365 U.S. 127, among other cases). "A plaintiff may not be held liable for bringing an objectively reasonable lawsuit, regardless of the plaintiff's subjective intent in initiating the litigation." GoldToeMoretz, LLC v. Implus Footcare, LLC, Civil No. 5:09–CV–0072, 2010 WL 3474792, at *3 (W.D.N.C. Aug. 31, 2010); see also Basic Med. Care Plus, Inc. v. N.C. Mut. Life Ins. Co., No. 1:03-CV-00269, 2005 WL 2205016, at *11 (M.D.N.C. Sept. 6, 2005);

---

[3] In Noerr, the court held that a railroad companies and trade groups could not be held liable under the federal anti-trust laws for lobbying for passage and enforcement of laws favorable to their industry, even though their sole purpose in doing so was to destroy competition from truckers and competitors for the long-distance freight business. 365 U.S. at 138-140. In Pennington, the court held that a company and union could not be held liable under the federal anti-trust laws for taking legitimate action to encourage government regulation favorable to their interests, even though facts had been alleged that their subjective purpose was to eliminate competition. 381 U.S. at 669-70.

5

Reichhold Chemicals, Inc. v. Goel, 146 N.C. App. 137, 157 (2001) (same).

Here, defendant has failed to allege facts tending to show that plaintiff has brought a sham or baseless lawsuit. Although defendant alleges generally that plaintiff has knowledge the patents in suit are invalid, defendant has alleged no facts tending to support this conclusory allegation. Where plaintiff alleges in the complaint that defendant's product infringes plaintiff's patents, and where those patents are entitled to a presumption of validity, see 35 U.S.C. § 282, this court cannot conclude that the suit is "so baseless that no reasonable litigant could realistically expect to secure favorable relief." Prof'l Real Estate Investors, 508 U.S. at 62. Defendant's assertion that the patents are invalid establishes at most that there may be a legitimate dispute regarding the patent's validity, not that plaintiff's suit is a sham or baseless. Therefore, the filing of this lawsuit does not constitute a proper basis for a UDTPA claim. See Ward, 618 F.Supp. at 907; GoldToeMoretz, 2010 WL 34747921, *3; Basic Med. Care Plus, 2005 WL 2205016, *11-12.

Defendant cites DIRECTV, Inc. v. Cephas, 294 F.Supp.2d 760 (M.D.N.C. 2003), in opposing dismissal. Cephas, however, is inapposite. There, plaintiff DIRECTV brought suit alleging that an individual had used signal theft equipment to view DIRECTV signals for which he had not subscribed. The defendant brought a counterclaim under the UDTPA, alleging that DIRECTV's pre-litigating conduct in attempting to force a settlement with the individual was abusive. The defendant alleged that plaintiff "threatened to prosecute him under both civil and criminal statutes, represented that it 'carried the weight of law enforcement,' intimated 'that DIRECTV has control over criminal statutes,' and 'meant to intimidate and carry the weight of authority.'" 294 F.Supp.2d at 766. The court found such allegations sufficient to state a claim under the UDTPA, in light of the defendant's allegations that plaintiff "accused him of a crime,

6

represented that it had power of law enforcement, and threatened to take action not permitted by law." Id. The court also declined to apply the Noerr-Pennington doctrine to shield the plaintiff from potential liability for such alleged abusive conduct. Id. at 767.

In the present case, by contrast, defendant has not based its counterclaims on comparable pre-litigation threats, accusations of criminal activity, or representations that plaintiff has the power of law enforcement. Nor is this a case where the defendant is an individual consumer faced with prosecution threats coming from a large corporation. Further, unlike in Cephas where the court found the defendant had alleged a UDTPA claim based upon allegations beyond the filing of a suit, the defendant here has not alleged conduct beyond initiation of this lawsuit as a basis of the UDTPA claim. Accordingly, principles underlying the Noerr-Pennington doctrine support dismissal of the claim under the UDTPA. See Ward, 618 F.Supp. at 907; GoldToeMoretz, 2010 WL 34747921, *3; Basic Med. Care Plus, 2005 WL 2205016, *11-12.

## CONCLUSION

As ordered at hearing on August 22, 2012, defendant's third counterclaim under the UDTPA is dismissed, and this memorandum opinion serves to memorialize the reasons for that dismissal.

SO ORDERED, this the 9th day of October, 2012.

LOUISE W. FLANAGAN
United States District Judge

7

Case 5:11-cv-00296-FL   Document 111   Filed 10/09/12   Page 7 of 7