IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:11-CV-00296-FL

| | | |
|---|---|---|
| VEOLIA WATER SOLUTIONS & TECHNOLOGIES SUPPORT, | ) ) ) | |
| Plaintiff, | ) ) | SEALED ORDER |
| v. | ) ) | [REDACTED FOR PUBLIC FILING] |
| SIEMENS INDUSTRY, INC., | ) ) ) | |
| Defendant. | ) | |

This matter comes before the court on plaintiff's motion to further amend protective order (DE 144), and plaintiff's proposed sealed motion to lower confidentiality designations (DE 152), to which defendant has responded in opposition. Also pending are defendant's motion to seal portions of plaintiff's proposed sealed memoranda and exhibits in support of these motions (DE 154), which plaintiff opposes; and defendant's motion to seal portions of its memorandum and exhibits (DE 165), and plaintiff's motion to seal exhibits in defendant's opposition (DE 175), which are unopposed.

## BACKGROUND

Plaintiff filed a complaint on June 13, 2011, and an amended complaint on July 5, 2011, alleging patent infringement by defendant and seeking monetary damages and injunctive relief to prevent continuing infringement. Plaintiff claims that defendant markets a wastewater treatment filter, the Forty-X disc filter, that infringes two patents owned by plaintiff, referred to as the '805 Patent and the '508 Patent (collectively "the patents-in-suit").

On February 7, 2012, the court entered a consent protective order, which includes a patent prosecution bar. In particular, paragraph 11(f) of the protective order states in pertinent part:

> Absent written consent from the providing party, any individual who receives HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY information shall not be involved in the prosecution of patents or patent applications relating to rotary disk filters and/or rotary disk filter systems, . . . .

(DE 28). "HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY" is defined in paragraph 9 of the protective order as:

> particularly sensitive Confidential Information that contains significant competitive information in the nature of a trade secret, confidential research and development, technical information, or financial information, which would not be disclosed in the ordinary course of business without an obligation of confidentiality and which if otherwise disclosed would harm the competitive position of the designating party or would place the receiving party at a competitive advantage.

(Id.).

On August 7, 2012, plaintiff moved to amend the protective order to specify that paragraph 11(f) applies only to materials "relating to confidential technical know-how, confidential or proprietary research, development, and the like" and not materials "containing financial, marketing, customer, economic, or other non-technical information." (DE 66). Defendant opposed the motion. On September 12, 2012, following conference with the parties, the court appointed James Lester to act as special master on the issue presented in the motion. The special master issued his recommendation to deny the motion to amend protective order without prejudice to future requests to modify. (DE 109). The court filed same and allowed parties to file objection, (DE 108), and plaintiff filed an objection to which defendant responded.

2

On December 3, 2012, the court heard argument on plaintiff's objection to the special master report, at which time plaintiff renewed its motion to amend and sought to further amend the protective order to exclude from the patent prosecution bar documents related to the design and development of defendant's product, which plaintiff contends show copying of the patented filter. (DE 125; DE 168 pp. 17-20). The court found good cause to amend the protective order to exclude financial documents from the terms of paragraph 11(f), and the court thus allowed in part the motion to amend the protective order as renewed through objections to the special master report. (DE 125; DE 168 p.32).[1] The court directed the parties to brief the issue of further amendment regarding treatment of design and development information. (DE 125; DE 168 pp.37-38).

On December 31, 2012, upon the consent of the parties, the court amended the case management order regarding discovery and <u>Markman</u> issues, under which all discovery is stayed until the court resolves the parties' disputes pertaining to the protective order. A claim construction

---

[1] The court directed the parties to confer and submit a proposed order with respect to financial documents. (DE 125; DE 168 pp. 35-37). Pursuant to proposed order as directed at hearing, the court entered on December 19, 2012, an order (DE 133), which amends paragraph 11 of the protective order to state now as follows:

(g) The terms of paragraph 11(f) shall not apply to documents or information which are marked "HIGHLY CONFIDENTIAL – ATTORNEYS ONLY" if such documents primarily disclose containing financial, business, marketing, customer or sales information. Documents to which paragraph 11(f) applies shall be redesignated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – PATENT BAR." The paragraph 11(f) designation may be applied retroactively. This patent bar applies to trial counsel. The parties will provide updated load files with the revised designations for documents previously produced.
(h) For the purposes of this Protective Order, "financial, business, marketing, customer or sales information" shall exclude technical information and be defined as follows:
(1) summary information showing the total amount of sales of a product or products over a period of time;
(2) information showing sales, costs, and profits for the Forty-X disc filters;
(3) information showing revenues and profits from convoyed sales and service, support and maintenance associated with the Forty-X disc filters;
(4) information on marketing and sales strategies associated with a particular product or products prior to the filing date of this litigation;
(5) information showing the total costs associated with the manufacture and sale of a product or products;
(6) lists of customers for individual products; and
(7) summary information showing the profit or loss associated with the sale of a product or products over a period of time.

hearing is not yet scheduled. The court will schedule a claim construction hearing to take place following the completion of claim construction briefing, including any supplemental briefing that may be necessary or ordered. Further, any fact discovery is to be completed 150 days after a claim construction opinion is issued.

On January 4, 2013, plaintiff filed a motion to further amend the protective order to provide, in pertinent part as follows:

> (i) The terms of paragraph 11(f) shall not apply to documents or information which are marked "HIGHLY CONFIDENTIAL – ATTORNEYS ONLY" if such documents disclose evidence of the design and development of the accused disc filter products, including but not limited to evidence of assessing, disassembling, measuring, studying, reverse engineering, or copying the patented products. . . .

(DE 144). On January 7, 2013, plaintiff filed a proposed sealed motion to lower confidentiality designations for fourteen documents, eleven of which presently are designated "HIGHLY CONFIDENTIAL" and three of which presently are designated "CONFIDENTIAL." (DE 152).

## DISCUSSION

### A. Motion to Further Amend Protective Order

Pursuant to Fed.R.Civ.P. 26(c)(1), the court may enter a protective order directing that "a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." As this court previously has observed, "[t]he party seeking to modify an existing protective order bears the burden of showing good cause for the modification." Pergo, Inc. v. Faus Group, Inc., No. 5:05-CV-50-FL, 2005 U.S. Dist. LEXIS 40601 *11 (E.D.N.C. Sept. 20, 2005) (citation omitted). "In determining whether a modification is warranted, the court must balance the risk of inadvertent disclosure of confidential information against the risk that the

4

protective order will impair the prosecution or defense of the opposing party's claims." Id. (citation omitted).

In In re Deutsche Bank Trust Co. Americas, 605 F.3d 1373 (Fed. Cir. 2010), the Federal Circuit provided guidance regarding the proper scope of a patent prosecution bar, such as the one in the protective order in this case. Where, as here, some of the attorneys involved in the litigation are substantially involved with patent prosecution,[2] the "risk of inadvertent disclosure of competitive information learned during litigation" is high. Deutsche Bank, 605 F.3d at 1381. "Accordingly, such attorneys would not likely be properly exempted from a patent prosecution bar." Deutsche Bank, 605 F.3d at 1381.

With respect to the scope of the patent prosecution bar, the district court must ensure "that the information designated to trigger the bar, the scope of activities prohibited by the bar, the duration of the bar, and the subject matter covered by the bar reasonably reflect the risk presented by the disclosure of proprietary competitive information." Id. In particular, "a court must be satisfied that the kind of information that will trigger the bar is relevant to the preparation and prosecution of patent applications before the [U.S. Patent and Trademark Office]." Id. "For example, financial data and other sensitive business information, even if deemed confidential, would not normally be relevant to a patent application and thus would not normally be expected to trigger a patent prosecution bar." Id. "On the other hand, information related to new inventions and

---

[2] Plaintiff conceded at argument that two of its attorneys, Larry L. Coats, lead trial counsel, and Emily Haas, an associate at the same law firm, are subject to the patent bar in light of their "substantial patent prosecution duties." (DE 168 at 12-13; see id. at 15). Two other attorneys of record for plaintiff, Anthony Biller and James Lawrence, are not subject to the patent bar in the protective order.

technology under development, especially those that are not already the subject of pending patent applications, may pose a heightened risk of inadvertent disclosure." Id.

Ultimately, the party seeking an exemption from a patent prosecution bar bears the burden to show on a counsel-by-counsel basis:

> (1) that counsel's representation of the client in matters before the PTO does not and is not likely to implicate competitive decisionmaking related to the subject matter of the litigation so as to give rise to a risk of inadvertent use of confidential information learned in litigation, and
>
> (2) that the potential injury to the moving party from restrictions imposed on its choice of litigation and prosecution counsel outweighs the potential injury to the opposing party caused by such inadvertent use.

Id. The court will address both of these prongs of plaintiff's burden in turn below.

### 1. Risk of Inadvertent Use

The court finds that plaintiff has failed to demonstrate that the exemption sought is not likely to give rise to a risk of inadvertent use of confidential information learned in litigation. As noted above, plaintiff seeks to exempt from the scope of the patent prosecution bar "documents disclos[ing] evidence of the design and development of the accused disc filter products, including but not limited to evidence of assessing, disassembling, measuring, studying, reverse engineering, or copying the patented products." (DE 144). Plaintiff's premise for its proposed amendment is that "[p]rotecting this kind of evidence from disclosure is not what the Federal Circuit had in mind when it fashioned its patent prosecution bar ruling in Deutsche Bank," given that these documents "do not reveal 'information related to *new* inventions and technology under development.'" (Pl's Mem. at 5) (quoting Deutsche Bank, 605 F.3d at 138).

6

As an initial matter, the court does not read <u>Deutsche Bank</u> as creating a rule that only "information related to *new* inventions and technology under development" properly falls within the scope of a patent prosecution bar. Rather, the court cited such information as an example of the type of material that "may pose a heightened risk of inadvertent disclosure" in contrast to "financial data and other sensitive business information." 605 F.3d at 1381. Between these two extremes, there is a range of information that may pose a risk of inadvertent disclosure higher than "financial data" and lower than "information related to new inventions and technology under development." <u>Id.</u>

With respect to the type of information subject to the proposed amendment, plaintiff asserts that it "can obtain no competitive advantage from its patent prosecution counsel reviewing evidence that [defendant] reverse engineered its own products." (Pl's Mem. at 5). Plaintiff suggests that documents purportedly showing defendants' "reverse engineering and copying" of plaintiff's patented product could not give plaintiff an unfair advantage because defendant's Forty-X disc filter has already been produced without any confidentiality designations. (<u>Id.</u> at 2-3). Plaintiff describes and attaches to its memorandum several examples of documents which it contends show reverse engineering and copying, and which it contends would not pose a risk of competitive advantage if exempted from the patent prosecution bar. (<u>Id.</u> at 3-5).

Plaintiff's argument is flawed in two main respects. First, plaintiff's argument does not adequately address the risk arising from disclosure of a potentially broad range of design and development information. The proposed amendment does not only seek to exempt documents evidencing reverse engineering or copying, but also seeks to exempt all documents "disclos[ing] evidence of the design and development of the accused disc filter products." (Pl's Mot. at 1). Documents falling within in such a broad category could reveal many competitive considerations

7

bearing on design trade-offs, testing methods, processes for optimization, and other research activities undertaken by defendant in the development of its product. The fact that such considerations took place in the past does not prevent plaintiff, as a competitor, from using such information to its advantage in prosecuting future patent claims, especially where plaintiff's counsel currently is handling continuing applications relating back to the patents in suit.

The court finds instructive comparison to Presidio Components, Inc. v. Am. Technical Ceramics Corp., 546 F. Supp. 2d 951 (S.D. Cal. 2008), in which the court considered a proposed patent bar that would be limited to restricting patent counsel "from seeing confidential information that relates to [defendant's] unreleased or future products, ongoing research and development and unpublished pending patent applications." Id. at 955. The court rejected this proposed limitation, reasoning that it was "not persuaded that it appropriately addresses [defendant's] ability to protect its confidential materials from misuse by competitors." Id. at 957-58. The court noted the defendant's arguments that "the proposal is unworkable because [defendant's] engineers use the research and development related to the accused product for ongoing research and development, so that [defendant's] confidential technical documents-even if they go to a different product-include information that a patent prosecutor for a competitor would find relevant to continuous claim drafting." Id. at 957. The court also noted defendant's argument that "patent prosecutors will know what experiments did and did not work, which would equip them with a wealth of knowledge about the possible new direction for the technology." Id. (quotations omitted).

The court finds many of these same considerations pertinent here. Defendant reasonably raises the possibility that disclosure of information about the design and development of defendant's product could provide plaintiff's counsel with knowledge about the possible new direction for the

filter technology at issue in this case. As defendant notes, information about design and development could include information on "which features [defendant] deems critical to efficient on the one hand or ripe for modification on the other." (Def's Mem. at 5). Further, while some "design and development" information may reveal reverse engineering, other design and development information may also disclose which components of defendant's products were not reverse engineered, thus revealing features that defendant deemed worthy of modification for its competitive advantage. (See id.).

Second, with respect to the individual documents cited by plaintiff as examples of copying and reverse engineering, the court finds that plaintiff has described too narrowly the potential significance of the documents in question. Assuming one properly could draw an inference of copying from the cited documents, which is an issue not presently before the court, many of the documents could reveal aspects which defendant found important for its competitive advantage in designing its own filter. Indeed, there are several instances in the documents where defendant's engineers discuss trade-offs between various approaches in the design of defendant's filter, suggesting an effort to improve upon existing technology. For example:

- A document entitled ████████████████████████████ discusses ██████████
  ██████████████████████████████████████████████████████████████
  ██████████████████████████████████████████ (Pl's Mem., Ex. B, SIEMENSIND0061519).
- An email chain involving defendant's engineers includes the following observations:██
  ██████████████████████████████████████████████████████████████
  ██████████████████████████████████████████████████████████████
  ██████████████████████████████████████(Id., Ex. C, SIEMENSIND0063263-4).

9

The court is mindful that some individual documents cited by plaintiff in the pending motions are borderline candidates for the patent prosecution bar as currently formulated, especially considering several documents for which defendant has already voluntarily reduced the confidentiality designation. (Compare Pl's Mem. Ex. D, with Mot. to Lower Conf. Designations, Ex. E). But, the fact that individual documents exist that may marginally qualify as "HIGHLY CONFIDENTIAL" does not support requiring exemption of an entire category of "design and development" information. The court will discuss below the possibility of reducing confidentiality restrictions for certain individual documents cited by plaintiff.

In sum, plaintiff has not met its burden to establish that disclosure of documents disclosing evidence of "design and development" to Mr. Coates and Ms. Haas would not give rise to a risk of inadvertent use of confidential information learned in litigation. Deutsche Bank, 605 F.3d at 1381.

### 2. Prejudice

Plaintiff also has not met its burden to show "that the potential injury to the moving party from restrictions imposed on its choice of litigation and prosecution counsel outweighs the potential injury to the opposing party caused by such inadvertent use." Deutsche Bank, 605 F.3d at 1381.

On the one hand, the court recognizes potential for challenges in managing the aspect of plaintiff's case based on a theory of copying and reverse engineering, due to the patent prosecution bar. In particular, plaintiff could have less resources available to assist with responding to defendant's invalidity contentions if Mr. Coats and Ms. Haas are unable to review and analyze evidence of reverse engineering and copying. And, without being able to review such evidence, lead counsel for plaintiff, Mr. Coats, could be hampered in his ability to advise his client on the value of its case and possible settlement. (See Pl's Mem. at 6-7).

10

On the other hand, however, this prejudice is mitigated by two primary factors. First, plaintiff has not demonstrated that Mr. Biller and Mr. Lawrence - two of the three attorneys of record in this case and members of the same firm as Mr. Coats and Ms. Haas - would be unable to effectively evaluate the information designated "HIGHLY CONFIDENTIAL" and assess its potential to support plaintiff's case. Second, the patent prosecution bar does not prevent Mr. Coats and Ms. Haas from examining other information and evidence bearing on defendant's invalidity contentions, and to develop arguments not based on a theory of copying or reverse engineering.

In sum, plaintiff has not established that its potential injury outweighs the risk of injury to defendant caused by inadvertent use of highly confidential information. Accordingly, the court will deny plaintiff's motion to amend the protective order.

## B. Motion to Lower Confidentiality Designations

Plaintiff moves to lower confidentiality designations on fourteen documents presently marked "HIGHLY CONFIDENTIAL" or "CONFIDENTIAL." Plaintiff first argues that ten of the documents presently marked "HIGHLY CONFIDENTIAL" should not be so marked because they provide evidence that defendant reverse engineered and copied plaintiff's product, and thus do not contain "trade secret, confidential research and development, technical information, or financial information" that is proprietary to defendant.

As noted above in addressing plaintiff's motion to amend protective order, the court finds that plaintiff has described several documents too narrowly, particularly documents containing discussion by defendant's engineers regarding the design and development of defendant's product. (E.g., Pl's Mot. to Lower Conf. Desig., Exs. C, D, F, G, and M). The fact that these documents may also evidence reverse engineering and copying does not necessarily lessen the highly confidential

11

nature of the documents where they include discussion of "confidential research and development, [or] technical information." (DE 28 ¶9). Accordingly the court finds no basis for reducing the confidentiality designation as to these documents.

Several documents, by contrast, comprising drawings of plaintiff's product or parts of plaintiff's product, without any narrative or discussion regarding the design and development of defendant's product, appear to be borderline candidates for designation as "HIGHLY CONFIDENTIAL." (DE 28 ¶9). In particular, where drawings marked as Exhibits H, I, J, K, and L, do not include discussion in any respect regarding defendant's own product, it is difficult to see how these drawings, without more, reveal "trade secret, confidential research and development, [or] technical information." (DE 28 ¶9).

Nevertheless, rather than lower the confidentiality designation of these five documents at this time, the court will deny the motion without prejudice, and the court will direct the parties to meet and confer in an effort to address the propriety of the confidentiality designation as to these documents and any other similarly-marked documents. This approach is warranted where defendant notes prior communication between the parties in which it stated it "is prepared to reexamine its designations with an emphasis on the remaining 12 documents once the court renders its final ruling on the Protective Order." (Def's Opp. at 4). Further, defendant emphasizes it would have preferred a more substantial opportunity to meet and confer with plaintiff prior to filing of the motion to lower confidentiality designations. (See id. at 4-5). Accordingly, the court provides the parties an opportunity to do so with benefit of the court's ruling today. If the parties reach an impasse upon meeting and conferring regarding the confidentiality level of these five documents, Exhibits H, I, J, K, and L, or any other individual documents whose designations they may revisit, the parties may

12

seek conference with the court, pursuant to procedures regarding discovery disputes set forth in the court's case management order.

The remaining issue raised by plaintiff's motion to lower confidentiality designations is whether documents presently marked "CONFIDENTIAL," included as exhibits E, N, O, and P, to the motion, are improperly designated confidential. Plaintiff argues that "[i]f anything, these documents disclose information sensitive to" plaintiff, not defendant, where they allegedly "present evidence of aggressive, blatant copying." (Pl's Mem. at 6). The court, again, finds plaintiff's description of the documents too narrow. As with other documents discussed above, each of the documents involves a communication involving defendant's engineers, thus the documents include information not only sensitive to plaintiff, but also sensitive to defendant. The documents reveal internal communications by defendant's employees, which, as evidenced by the confidentiality statements in the documents, were never intended to be made public. These documents thus evidence "sensitive business" and "technical" information properly subject to the "CONFIDENTIAL" designation under the protective order. (DE 128 ¶ 7). Accordingly, the court does not find good cause to lower the confidentiality designation as to these documents.

In sum, the court will deny without prejudice plaintiff's motion to lower confidentiality designations, and direct the parties to meet and confer in accordance with the above discussion.

**C. Motions to Seal**

Defendant has filed a motion (DE 154) to seal portions of plaintiff's memorandum in support of motion to lower confidentiality designations (DE 147) and portions of plaintiff's memorandum in support of motion to further amend protective order (DE 151). The portions that defendant seeks to seal are passages that describe or quote documents designated

13

"CONFIDENTIAL" and "HIGHLY CONFIDENTIAL" under the protective order (DE 28 ¶¶ 7,9). Defendant also moves to seal in full exhibits A-G to DE 151 and exhibits C-P to the motion to lower confidentiality designations docketed at DE 152. In support of the motion, defendant reiterates its arguments made in opposition to plaintiff's motions to lower confidentiality designations and to further amend protective order, namely that the specified documents relate to the development of the accused product and disclose detailed technical information, disclosure of which would unfairly harm defendant's competitive position. (Def's Mem. in Sup. M. to Seal at 3-4).

In opposition to the motion, plaintiff reiterates its argument that the specified documents only show that defendant reverse engineered and copied plaintiff's product and thus only reveal confidential information about plaintiff's product but not defendant's product. (Pl's Opp. at 2). For the reasons discussed above in sub-sections B. and C. of this order, the court rejects plaintiff's argument. For good cause shown, the court will grant defendant's motion to seal (DE 154), finding that the documents specified in the motion contain confidential commercial information proprietary to defendant, that public dissemination of this information would harm defendant, and that this harm outweighs any right to access granted by common law. See Stone v. Univ. of Maryland Med. Sys. Corp., 855 F.2d 178, 181 (4th Cir. 1988). In addition, the court finds the redactions proposed by defendant to be an appropriate alternative to sealing the entire memoranda, see id., and the court likewise will direct the clerk to file this order under seal, with a publicly-filed version containing redactions of confidential information in the order.

Also pending before the court is defendant's motion to seal portion of its memorandum and exhibits (DE 165), which is unopposed. In particular, defendant moves to seal portions of its memorandum in opposition to plaintiff's motion to lower confidentiality designations which describe and quote from confidential documents produced during discovery, and to seal in full exhibits E and

F to the declaration of Rose Whelan submitted in support of the memorandum in opposition, which are exhibits related to the development of defendant's product. For good cause shown, the court will grant defendant's motion to seal, finding that the documents specified in the motion contain confidential commercial information proprietary to defendant, that public dissemination of this information would harm defendant, and that this harm outweighs any right to access granted by common law. See Stone, 855 F.2d at 181. In addition, the court finds the redactions proposed by defendant to be an appropriate alternative to sealing the entire memoranda. See id.

Finally, plaintiff has filed a motion to seal (DE 175) exhibits A, B, and C to the declaration of Rose Whelan submitted with defendant's memorandum in opposition to the motion to lower confidentiality designations. The three cited documents contain non-public information concerning technical details about plaintiff's product and third parties with which plaintiff has commercial relationships. For good cause shown, the court will grant plaintiff's motion to seal, finding that the documents specified in the motion contain commercial information proprietary to plaintiff, that public dissemination of this information would harm plaintiff, and that this harm outweighs any right to access granted by common law. See Stone, 855 F.2d at 181.

**CONCLUSION**

Based on the foregoing, plaintiff's motion to further amend protective order (DE 144) is DENIED. Plaintiff's proposed sealed motion to lower confidentiality designations (DE 152) is DENIED WITHOUT PREJUDICE. The parties are DIRECTED to meet and confer with respect to lowering confidentiality designations for particular documents in accordance with this order. The motions to seal (DE 154, 165, 175) are GRANTED. Accordingly, the court DIRECTS the clerk to seal DE 147 and DE 151, and to file publicly the redacted versions of DE 147 and DE 151 submitted as Exhibit A and Exhibit B to DE 155. The court also DIRECTS the clerk to seal Exhibits A-G to

DE 151 and Exhibits C-P to DE 152. The court further DIRECTS the clerk to seal Exhibits A, B, C, E, and F, to DE 163. Finally, in accordance with the foregoing, the court DIRECTS the clerk to seal this order and to file publicly the redacted version appended hereto.

SO ORDERED, this the 20th day of May, 2013.

LOUISE W. FLANAGAN
United States District Judge