IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:11-CV-00296-FL

| | | |
|---|---|---|
| VEOLIA WATER SOLUTIONS & TECHNOLOGIES SUPPORT, | ) ) ) | |
| Plaintiff | ) ) | |
| v. | ) ) | ORDER |
| SIEMENS INDUSTRY, INC., and EVOQUA WATER TECHNOLOGIES LLC, | ) ) ) ) | |
| Defendants. | ) | |

This matter is before the court on two sets of motions taken under advisement, in part, at hearing held October 1, 2014: (1) plaintiff's motion to compel production of documents withheld as privileged (DE 274); and (2) plaintiff's motion to strike defendant's amended invalidity contentions (DE 297) and defendants' related motion to amend invalidity contentions (DE 320). Defendants submitted for in camera review representative documents related to the motion to compel. The parties filed additional briefing post-hearing related to the motion to strike and motion to amend invalidity contentions. In this posture, the issues raised are ripe for ruling.

## BACKGROUND

Plaintiff filed suit in June 2011 alleging patent infringement by defendant Siemens Industry, Inc. ("Siemens"). Plaintiff seeks monetary damages and injunctive relief to prevent continuing alleged infringement. Plaintiff claims that defendant Siemens markets a wastewater treatment filter (the Forty-X disc filter) that infringes two patents owned by plaintiff (the '805 Patent and the '508

Patent). In December 2011, defendant Siemens filed answer and counterclaims, including assertions that plaintiff's patents are invalid. Defendant Siemens filed an amended answer and counterclaims on May 18, 2012. The court dismissed and struck certain affirmative defenses and counterclaims on August 22, 2012.

The parties filed their initial joint claim construction statement on July 20, 2012 (DE 57), and an initial round of briefs on claim construction concluding December 31, 2012 (DE 119, 120, 135, 139). Subsequently, by order entered May 16, 2013, the court allowed defendant Siemens to proceed with certain amended non-infringement and invalidity contentions, but not others, which led to filing of another joint claim construction statement (DE 196) and round of supplemental briefing concluding August 22, 2013. (DE 197-200).

The court held claim construction hearing on January 22 and 23, 2014. Evoqua Water Technologies LLC ("Evoqua") was added as a second defendant in this matter on January 22, 2014, based on a business transfer involving defendant Siemens. With no objection, the court granted the motion to add Evoqua as a defendant, and Evoqua filed an answer on February 12, 2014, which is in material part the same as the answer of Siemens, and which responds to the allegations of the complaint as if directed at Evoqua. The court entered its claim construction order May 5, 2014.

In its claim construction order, the court directed the parties to provide the court with a joint statement regarding scheduling of remaining case activities and deadlines, including whether the parties seek any departure from the deadlines set forth in the court's prior case management orders and in the local patent rules. On June 16, 2014, the court adopted the schedule proposed by the parties, including a July 9, 2014, deadline for filing final non-infringement and invalidity

contentions; an October 17, 2014, deadline for close of fact discovery (except discovery raised in expert reports); and a February 16, 2015, deadline close of expert discovery.

Beginning July 27, 2014, the parties filed a series of motions which all came before the court for hearing on October 1, 2014. The court granted the parties' joint motion to modify discovery deadlines, setting December 31, 2014, as the new deadline for fact discovery (except discovery raised in expert reports), and April 15, 2015, as the new deadline for expert discovery. As noted in the court's October 9, 2014, memorializing rulings at hearing, the court took under advisement in part the instant motions: (1) plaintiff's motion to compel discovery responses, related to documents withheld as privileged (DE 274); and (2) plaintiff's motion to strike defendant's amended invalidity contentions (DE 297) and defendants' related motion to amend invalidity contentions (DE 320). The court stayed briefing on defendants' motion for summary judgment of invalidity (DE 281) pending consideration of the motion to strike and motion to amend.

With respect to the motion to compel production of documents withheld as privileged, defendants submitted to the court on October 15, 2014, for in camera review, a representative portion of documents in dispute to assist the court's analysis of defendants' privilege claims.

On October 3, 2014, plaintiff moved to reopen argument on its motion to strike. The court ordered additional briefing. In the meantime, on October 14, 2014, defendants filed a notice concerning statements made by defendants at the October 1, 2014, hearing concerning discovery of information regarding the HSF 2100 and HSF 3100 disc filters. On October 20, 2014, defendants filed a notice withdrawing arguments made in opposition to the motion to strike, and in support of the motion to amend, that were premised on the portion of Local Rule 303.7 that permits amendment within thirty days of the discovery of new information relevant to the issues of invalidity.

3

Defendants maintained the balance of their arguments pertaining to these motions, however, and the parties completed supplemental briefing November 10, 2014.

## DISCUSSION

### A.     Motions Regarding Invalidity Contentions

Plaintiff moves to strike defendants' amended invalidity contentions served July 9, 2014, on the basis that they are untimely pursuant to the case schedule established by the Local Patent Rules. The challenged invalidity contentions fall generally into two categories: (1) that parent applications of the two patents-in-suit,[1] alone or in combination with other prior art previously disclosed, render the claims of the patents-in-suit invalid; and (2) that prior sales and manuals of the HSF 3100 and HSF 2100 disc filters,[2] in themselves or in combination with other prior art previously disclosed, render the claims of the patents-in-suit invalid.[3]  The court will address each of these categories in turn below.

### 1.     Parent Applications

Defendants argue that the parent application invalidity contentions are based directly on the court's reasoning in its May 5, 2014, claim construction order.  Defendants assert that they believed in good faith that the court's claim construction order requires the amendments, thus falling within

---

[1]  The parent applications at issue are the Swedish Patent Application No. 0300532-9, filed February 27, 2003, and the PCT Application No. WO 2004/076026, filed Februarty 24, 2004 (DE 317-12 at 2).

[2]  In their amended invalidity contentions defendants refer collectively to the HSF 1300, 1700, and 2100 Hydrotech series disc filters as the HSF 2100 disc filter.

[3]  Two additional categories of amended invalidity contentions originally described by plaintiff in the motion to strike appear to have been resolved in the briefing.  First, plaintiff claimed initially that defendants currently assert several amended invalidity contentions which the court previously struck by this May 16, 2013, order.  Defendants state that this was a clerical error on their part, and agree to withdraw those contentions.  (DE 315 at 6 n. 10).  Second, plaintiff initially claimed that defendants created new obviousness arguments, but defendants state that no new obviousness combinations were disclosed.  (DE 315 at 2 n. 2).  To the extent any new obviousness contentions are included in the HSF 2100 and HSF 3100 invalidity contentions, those are covered by the court's ruling regarding the HSF 2100 and HSF 3100 invalidity contentions.

an exception for amendments under Local Patent Rule 303.6(b)(2). Plaintiff contends that amendment on this basis is not warranted because the court's claim construction ruling was not unexpected.

Under Rule 303.6, a party's preliminary invalidity contentions generally shall be deemed to be that party's final contentions, except as set forth in the rule. An exception is provided for amendments to invalidity contentions made within 50 days of the court's claim construction ruling, where the amending party "believes in good faith that the Court's Claim Construction Ruling so requires." Local Patent Rule 303.6(b)(2). In this case, where the court entered its claim construction order on May 5, 2014, final invalidity contentions under this rule would have been due June 16, 2014. By consent of the parties, however, the court extended the deadline for final invalidity contentions to July 9, 2014, and defendant duly served its final invalidity contentions by that date. (DE 317-12). Thus, the issue for decision is whether that timely served amendment met the "good faith" exception set forth in Rule 303.6(b)(2).

This court has not interpreted previously the "good faith" exception. Plaintiff urges the court to adopt the interpretation of an identical provision adhered to by courts in the Eastern District of Texas and the Southern District of New York. Those courts have allowed amendment under this provision only if the court's claim construction ruling was "unexpected," thus precluding "adequate notice and information" of a potential claim construction ruling for a party to make invalidity contentions earlier. Finisar Corp. v. DirecTV Group, Inc., 424 F.Supp.2d 896, 901 (E.D. Tex. 2006); Convolve, Inc. v. Compaq Computer Corp., No. 00 Civ. 5141, 2006 WL 2527773 *3 (S.D.N.Y. Aug. 31, 2006).

The court declines to adopt the interpretation of the "good faith" exception by the Eastern District of Texas and the Southern District of New York. When faced with the interpretation of a procedural rule, like the interpretation of any statute, the court's analysis must begin with the plain language of the text of the rule. See, e.g., Dodd v. United States, 545 U.S. 353, 359 (2005) ("[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms."). Here, the rule states only that amendment may be allowed where the amending party "believes in good faith that the Court's Claim Construction Ruling . . . requires" amendment. Local Patent Rule 303.6(b)(2). It does not require that the court's claim construction ruling be "unexpected."

Conditioning amendment on whether a ruling is "unexpected" interjects a different, narrower, standard into Local Patent Rule 303.6(b)(2) that is not stated or even suggested in the text of the Rule. In adopting this narrower standard, the court in Finisar further defined an "unexpected" ruling as one "so surprising, or differ[ing] so greatly from the proposals made by the parties, that it justifies admission of new prior art references." 424 F.Supp.2d at 901. Analysis under this standard, as the parties' discussion in their briefs demonstrates, turns on an objective determination of the extent to which the court's claim construction ruling departs from the proposals of the parties.

A "good faith" belief, however, commonly is understood in the law to be a subjective standard. See, e.g., Resorts of Pinehurst, Inc. v. Pinehurst Nat. Corp., 148 F.3d 417, 420 (4th Cir. 1998) (describing "a subjective belief" as one where the declarant "has an honestly held, good faith belief"); United States v. Hirschfeld, 964 F.2d 318, 322 (4th Cir. 1992) (noting that "subjective good faith [is] an honest belief" and a "person who acts on a belief or an opinion honestly held is not punishable under the law merely because that honest belief turns out to be incorrect or wrong"); In

re Bose Corp., 580 F.3d 1240, 1244 (Fed. Cir. 2009) (considering a "declarant's subjective, honestly held, good faith belief").

Thus, under a subjective standard, amendment to invalidity contentions should not be based on whether this court finds that the claim construction order requires it, nor on whether plaintiff agrees that the claim construction order requires it, but rather based only on whether defendants subjectively believed the claim construction order requires it. This inquiry does not depend on the correctness of defendants' assessment, nor its reasonableness, but rather on whether defendants' belief was honest.

While the court in Finisar suggested that policy considerations justify crafting a narrower standard for amendment, the court's role is not in this instance to improve upon the language of the rule but rather to apply it as written. See Dodd, 545 U.S. at 359 (2005). In any event, the "good faith" standard is one commonly applied in the law, and it affords the court adequate basis for disallowing amendment where the record supports a finding that the amendment was made not because of the court's claim construction order but rather only to derail orderly progress of the case.

In this case, the record reflects that defendants added invalidity contentions based upon the parent applications, in good faith belief that the court's claim construction order required these additions. This conclusion is supported not by the "unexpected" nature of the court's claim construction order, but rather by the fact that court's claim construction order directly addressed the impact of the parent applications on the claim construction analysis. (See, e.g., Claim Construction Order, DE 264, at 20, 21, 40). Moreover, defendants stated at the claim construction hearing that if the court did not limit the claims to reflect the language in the parent applications, then defendants would come back and seek to invalidate the patents-in-suit based upon such parent applications.

(See Tr. at 288 (DE 252 at 92)). It is difficult to conceive of more direct evidence of a subjective good faith belief than defendants' assertions in open court, prior to the court's claim construction ruling and prior to making the amendments. The close relationship between the claim construction order and defendants' subsequent amendment to invalidity contentions supports, rather than detracts from, a finding of good faith. It shows that defendants' amendments are, in fact, related to the claim construction ruling and not based on some other reason, completely divorced from the claim construction ruling.

In sum, plaintiff's motion to strike invalidity contentions is denied in that part directed to amendments based upon the parent applications. In so ruling, the court expresses no opinion on whether the court's claim construction requires judgment in favor of defendants on its amended invalidity contentions based on the parent applications. It suffices that the amendments to invalidity contentions are closely related to determinations made in the court's claim construction order, thus supporting a finding of a good faith belief on the part of the defendants that such amendments are required by the order.

2. HSF 2100 and HSF 3100 disc filters

Defendants initially sought to amend invalidity contentions to add references to the HSF 2100 and HSF 3100 disc filters, on the basis that these followed discovery of new information obtained less than 30 days prior to service of the amended contentions, pursuant to Local Patent Rule 303.7. Defendants now have withdrawn that argument, (DE 350) recognizing that "during the pendency of this litigation, they had access to information about the structure of the HSF 2100 and HSF 3100 disk filter systems." (DE 347 ¶8). Defendants, however, continue to assert that leave to

amend should be granted for "good cause" under Local Rule 303.7. Plaintiff maintains, by contrast, that the court should strike these amendments for lack of good cause.

Local Patent Rule 303.7 allows amendment to invalidity contentions only as provided in Rule 303.6 or within 30 days of the discovery of new information relevant to invalidity. "Otherwise, amendment or modification shall be made only by order of the court, which shall be entered only upon a showing of good cause." This court previously has interpreted the "good cause" provision of Local Patent Rule 303.7 to require a showing of "diligence" and lack of prejudice to the non-amending party. (Order, May 16, 2013, at 5 (citing O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc., 467 F.3d 1355, 1363 (Fed. Cir. 2006)).

Defendants urge the court to consider additional factors in determining "good cause" for amendment under Local Patent Rule 303.7, such as the importance of the information proposed in the amendment, whether the movant made an honest mistake, and whether there is ample time left in discovery. Defendants argue, for example, that they made an honest mistake in failing to appreciate the evidence in their own document production. They also argue that the prior art that is subject of the amended invalidity contentions "clearly has the potential to weigh heavily on the Court's invalidity analysis." (DE 358 at 7).

The court need not decide in this instance whether the additional factors proposed by defendants properly may be considered in determining "good cause" for an amendment. Even considering the additional factors proposed by defendants, the court determines that defendants have not demonstrated "good cause" for the amendments based on the HSF 2100 and HSF 3100 disc filters. The court does not find credible defendants' assertion that this prior art could be so clearly material, but at the same time overlooked by honest mistake in its own production. Documents

offered at hearing, including (1) an email dated March 15, 2007, titled "Ace poker??!!" (DE 353); (2) 2007 documents described in defendants' October 14, 2014, notice (DE 347); (3) 2007 documents attached to plaintiff's reply brief (DE 368); and (4) further historical documents subject to the court's privilege review; all demonstrate that defendants knew of sufficient information to assert invalidity contentions based upon the HSF 2100 and HSF 3100 disc filters at the time of their initial invalidity contentions.

In sum, defendants have not demonstrated good cause for amendments to invalidity contentions based on the HSF 2100 and HSF 3100 disc filters. Defendant's motion for leave to amend invalidity contentions therefore must be denied. Plaintiff's motion to strike these amendments will be granted in this part.[4]

B.     Motion to Compel

Plaintiff moves to compel production of certain documents withheld on the basis of attorney-client privilege. The disputed documents, as described in privilege logs produced by defendants, are comprised mainly of email communications, handwritten notes, and reports, created by non-attorneys, which defendants have withheld on the basis that they reflect the advice of counsel, or that they were prepared for the purpose of facilitating legal advice. As noted in the court's October 9, 2014, order memorializing rulings at hearing, the disputed documents are highlighted in a privilege log appended to the court's October 9, 2014, order.

---

[4] In so ruling, the court notes plaintiff's suggestion in passing that the court should consider whether defendants have engaged in sanctionable conduct. Upon consideration of all the circumstances, including review of the parties' briefs, argument at hearing, as well as documents of record including those reviewed in camera for purposes of privilege review, the court finds that defendants have not engaged in conduct warranting sanctions beyond striking the asserted invalidity contentions based upon the HSF 2100 and HSF 3100 disc filters. The court's determination is based on consideration of a number of factors, including in this case defendant's October 14, 2014, notice correcting statements made at hearing, as well as defendant's October 20, 2014, notice withdrawing argument.

At hearing, the court ordered defendants to produce to the court for in camera review representative samples of disputed documents, divided generally into two categories: (1) documents marked by plaintiff as "no legal individuals to/from" and (2) "Peter Petit Documents," referring to an individual closely involved with the creation of defendants' accused product. The court has reviewed the documents provided in camera in light of the applicable law.

Based on the court's review, as set forth below, the court finds that defendants correctly have withheld as privileged a majority of the documents provided for in camera review, and that the descriptions provided in the privilege logs are accurate. The court notes, however, several exceptions, and the court will direct production of those documents not privileged.

1.      Applicable Law

"The applicability of attorney-client privilege in a case such as this, in which subject matter jurisdiction extends from the underlying presence of a federal patent law question, is determined by federal common law." Wi-LAN, Inc. v. Kilpatrick Townsend & Stockton LLP, 684 F.3d 1364, 1368 (Fed. Cir. 2012) (citing Fed. R. Evid. 501). In addition, "[w]here the issues concerned are not unique to patent law, th[e] court applies the law of the regional circuit" of the district court. Id. Accordingly, the court will apply Fourth Circuit case law to resolve the disputed privilege issues in this case. "A party asserting privilege has the burden of demonstrating its applicability." N.L.R.B. v. Interbake Foods, LLC, 637 F.3d 492, 501 (4th Cir. 2011).

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." Id. "[T]he

privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." Id. at 390.

The traditional formulation of attorney-client privilege includes many elements, some of which are not at issue in the present dispute. In particular, to establish attorney-client privilege, a party must show that:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or is his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

Interbake Foods, LLC, 637 F.3d at 501-02 (quotations omitted). In this case, the elements most at issue are whether "the communication relates to a fact of which the attorney was informed . . . for the purpose of securing primarily either (i) an opinion on law or (ii) legal services." Id.

"[U]nder normal circumstances, an attorney's advice provided to a client, and the communications between attorney and client are protected by the attorney-client privilege." In re Grand Jury Proceedings, 102 F.3d 748, 750 (4th Cir. 1996). Protection "may . . . be extended to protect communications by a lawyer to his client, agents or superiors, or to other lawyers in the case of joint representation if those communications reveal confidential client communications." United States v. (Under Seal), 748 F.2d 871, 874 (4th Cir.1984). Generally, communications by a non-attorney are not privileged, such as where the non-attorney "was not hired by any attorney nor worked for any attorney." In re Grand Jury Proceedings, 102 F.3d at 752. However, a communication by a non-attorney may in some instances reflect legal advice of an attorney.

This court has observed, for example, that "[a] document need not be authored or addressed to an attorney in order to be properly withheld on attorney-client privilege grounds." <u>Santrade, Ltd.</u> <u>v. Gen. Elec. Co.</u>, 150 F.R.D. 539, 545 (E.D.N.C. 1993). "[D]ocuments subject to the privilege may be transmitted between non-attorneys (especially individuals involved in corporate decision-making) so that the corporation may be properly informed of legal advice and act appropriately." <u>Id.</u> In addition, "documents subject to the privilege may be transmitted between non-attorneys to relay information requested by attorneys." <u>Id.</u>; <u>see</u> <u>also</u> <u>Upjohn</u>, 466 U.S. at 390 (stating that the privilege extends to "giving of information to the lawyer to enable him to give sound and informed advice"). <u>Rohlik v. I-Flow Corp.</u>, 7:10-CV-173-FL, 2012 WL 1596732 *3 (E.D.N.C. May 7, 2012) ("The communications retain their privileged status if the information is relayed from a non-lawyer employee or officer to other employees or officers of the corporation on a need to know basis.") (quotation omitted); <u>ePlus Inc. v. Lawson Software, Inc.</u>, 3:09CV620, 2012 WL 6562735 *7 (E.D. Va. Dec. 14, 2012) (holding following in camera review that certain "communications between non-attorneys reflecting legal advice" were privileged where attorneys were carbon copied on the communications).

In the Fourth Circuit, "the attorney-client privilege does not apply to communications in connection with a proposed public disclosure: if a client communicates information to his attorney with the understanding that the information will be revealed to others, that information as well as the details underlying the data which was to be published will not enjoy the privilege." <u>In re Grand</u> <u>Jury Proceedings, Thursday Special Grand Jury Sept. Term, 1991</u>, 33 F.3d 342, 354-55 (4th Cir. 1994) (internal quotations omitted). In this vein, this court has recognized that the following classifications of documents generally are not protected by the attorney-client privilege:

1. Papers submitted to the Patent Office;
2. Technical information communicated to the attorney but not calling for a legal opinion or interpretation and meant primarily for aid in completing patent applications;
3. Business advice such as that related to product marketing; and
4. Patent disclosures, draft patent applications, technical non-legal material related to the final patent, or studies of the prior art.

Burroughs Wellcome Co. v. Barr Labs., Inc., 143 F.R.D. 611, 615 (E.D.N.C. 1992); see Santrade, 150 F.R.D. at 544 ("Privilege does not extend to drafts of patent applications. . . . [or] [p]reliminary drafts of published data, including attorney notes necessary to the preparation of the documents.").

Nevertheless, "[t]he fact that much of the technical information in one form or another finds its way into the patent application, to be made public when the patent issues, should not preclude the assertion of the privilege over the communication in which the information was disclosed to the attorney." Burroughs Wellcome, 143 F.R.D. at 616. "[T]he court has extended the attorney-client privilege to prior art searches and discussions and documents related to the prior art if they contain or reflect communications made in connection with requests for legal advice or a legal opinion as to patentability." Id.

Generally, communications between a client and a non-attorney patent agent are privileged, where a patent proceeding is pending before the Patent Office, and "where that patent agent is acting at the direction or control of an attorney as the agent of the attorney." Glaxo, Inc. v. Novopharm Ltd., 148 F.R.D. 535, 538 (E.D.N.C. 1993) (internal quotations omitted); see Burroughs Wellcome, 143 F.R.D. at 617 (stating that where a "patent agent is engaged in the lawyering process, the communication is privileged to the same extent as any communication between co-counsel").

2.      Application

In light of these principles of law, the court makes the following determinations with respect to the disputed documents.  As noted above, the court finds that a large portion of the documents submitted for in camera review are privileged.  In particular, most of the withheld documents or redacted portions thereof are privileged because they (1) contain communications describing the nature or extent of legal advice provided or sought regarding particular matters; (2) contain communications seeking legal advice from an attorney, or a patent agent engaged in provision of legal advice for purposes of determining patentability; or (3) make statements that are identified as legal advice from an attorney, or subject matter of ongoing work of an attorney, or information that needs to be transmitted to an attorney for provision of legal advice.  By contrast, only the following documents or categories of documents, marked privilege in defendants' privilege log, are not privileged.

a.      Peter Petit Documents

For the reasons set forth below, the following documents noted in the privilege log captioned "Peter Petit Documents"  are not privileged:

1.      SiemensPriv 0048.001
2.      SiemensPriv 0048.002
3.      SiemensPriv 0048.004
4.      SiemensPriv 0286.003
5.      SiemensPriv 0374.002
6.      SiemensPriv 0559.002
7.      SiemensPriv 0759
8.      SiemensPriv 0796-0029 through 0796-0052
9.      SiemensPriv 0751

Defendants describe several of these communications in this privilege log as containing discussions of prior art or a competitor's patent for purposes of obtaining legal advice.  In particular,

15

SiemensPriv 0048.001, 0048.002, 0048.004, 0286.003, 0374.002, and 0559.002, comprise emails between non-attorneys discussing the subject of prior art. These communications are not privileged because no attorneys or patent agents are copied, and nothing in the communications themselves specifies what legal advice or legal analysis was provided by an attorney or patent agent, nor what information if any was transmitted for purposes of legal advice.

While references in these emails to "we" conceivably could suggest involvement of attorneys in analysis of the same subject matter, where attorneys or patent agents are not participating or referenced in the communication, and the identity of "we" is not specified in the communication, privilege protection over that particular communication is not warranted. Although the nature of the discussion may implicate legal issues, such discussion by non-attorneys of issues having potential legal implications does not in itself transform the communication to attorney client privileged communication. Further, the fact that a paralegal is copied on the communication in SiemensPriv 0286.003, without some specific reference or direction to the paralegal, is not sufficient in itself to establish privilege, given the absence of other indicia of attorney-client privileged communication.

Similarly, the redacted portion of SiemensPriv 0759 is not privileged. While the description states that the document was provided to "Siemens IP group primarily for the purposes of seeking legal advice," the document itself does not state this or suggest that legal advice is being sought, as opposed to providing the document for other corporate or intellectual property management purposes. Where the document is authored by Peter Petit, a non-attorney, the prior art study analysis therein is not privileged, without more specific reference to legal consultation or provision of legal advice regarding the same. (See SiemensPriv 0759-0002). For the same reason, other statements

16

in the document regarding steps to be taken, such as "[w]e should file a provisional patent immediately," (SiemensPriv 0759-0001), absent reference to provision or request for legal advice, or other legal dispute, do not constitute attorney-client privileged communications.[5] See In re Grand Jury Proceedings, Thursday Special Grand Jury, 33 F.3d at 354-55; Burroughs Wellcome, 143 F.R.D. at 616; Santrade, 150 F.R.D. at 544.

In a similar vein, certain redacted portions of SiemensPriv 0796, which is a multiple-page file that includes various parts of a "Capital Appropriation Request," are not privileged, whereas other parts of the same documents are marked correctly as privileged. Portions discussing the nature of legal analysis and consultation are marked correctly as privileged. (See, e.g., SiemensPriv 0796-0020). By contrast, portions that, in themselves, do not reference legal consultation or provision of legal advice, nor request for legal advice, are not privileged. (See SiemensPriv 0796-0029 through 0796-0052). Such non-privileged documents include prior art analysis prepared by non-attorneys, as well as an invention disclosure noted as intended for public release. While description of the nature and extent of legal analysis and consultation regarding information in the document is privileged, the underlying technical information prepared by non-attorney engineers is not in itself privileged. See In re Grand Jury Proceedings, Thursday Special Grand Jury, 33 F.3d at 354-55; Burroughs Wellcome, 143 F.R.D. at 616; Santrade, 150 F.R.D. at 544.

---

[5] The court notes that the date of the document specified in the privilege log is April 23, 2007, whereas the document was executed by Peter Petit on April 23, 2006. In addition, the court notes one entry in the privilege log designated by defendants for in camera review, SiemensPriv 0770.003 ("Peter Petit Documents"), is not in fact in the materials provided for in camera review. Based on the description and date, however, it appears to be the same or similar document as SiemensPriv 0759, warranting the same treatment as non-privileged.

Finally, SiemensPriv 0751 is not privileged, as the description in the privilege log encompasses the entirety of the content of the document, thus waiving any privilege that may have attached thereto.

b.      No Legal Individuals To/From Documents

For the reasons set forth below, the following documents noted in the privilege log captioned "No Legal Individuals To/From" are not privileged:

1.      SiemensPriv 0025.004[6]
2.      SiemensPriv 0025.005
3.      SiemensPriv 0520-0003 (redacted portion on this page only)
4.      SiemensPriv 0520.002
5.      SiemensPriv 0520.003
6.      SiemensPriv 0521.001
7.      SiemensPriv 0522
8.      SiemensPriv 0604.001 (except for the sentence following the words "Plan B")
9.      SiemensPriv 0647.003
10.     SiemensPriv 0755
11.     SiemensPriv 0758

A number of these documents, or redactions portions thereof, are described in the privilege log as emails containing discussions of the "Hydrotech patent" for purposes of conveying information to facilitate legal advice. These comprise SiemensPriv 0025.004, 0025.005, 0520-0003, 0520.002, 0520.003, 0521.001, and 0522. With respect to these documents, no attorneys or patent agents are copied on the emails, and the emails do not state what legal advice or legal analysis was provided by an attorney or patent agent, nor the nature or extent of any information conveyed for purposes of obtaining legal advice. While the emails suggest potential questions that could be posed

---

[6] The privilege log entry for SiemensPriv 0025.004 references a redacted portion of the email. The corresponding document provided for in camera review, however, does not contain any redaction markings. The court presumes that the entire email was intended to be marked as privileged.

18

to legal counsel, or information that potentially could be provided, the emails themselves do not reveal confidential communications protected by the attorney-client privilege.

Similarly, the court finds not privileged the bulk of SiemensPriv 0604.001, which is described in the privilege log as an email "primarily for the purpose of communicating legal advice in anticipation of litigation." Although the privilege log refers to a "redacted portion" of the email, there are no redactions delineated in the document provided for in camera review. The court finds that only one sentence in the email is privileged and properly subject to redaction as privileged communication. In particular, defendants should redact as privileged the sentence following the words "Plan B" in the text of the email. All other text in the email is not privileged and should be produced without redaction.

An email at SiemensPriv 0647.003 is not privileged for the same reason that the identical email at SiemensPriv 0286.003, in the "Peter Petit Documents" privilege log, is not privileged.

In addition, handwritten notes at SiemensPriv 0755, described as "reflecting analysis of Hydrotech infringement allegations drafted in anticipated of litigation," are not privileged as no attorneys or patent agents are referenced, and the document does not state what legal advice or legal analysis was provided by an attorney or patent agent, nor the nature or extent of any information conveyed for purposes of obtaining legal advice.

Finally, the prior art study at SiemensPriv 0758 is not privileged as it does not contain references to legal advice or information provided for purposes of legal advice, regarding the prior art study. See Burroughs Wellcome, 143 F.R.D. at 616.

The remaining documents in the "No Legal Individuals To/From" are correctly marked privileged. The court notes, however, a few discrepancies between the privilege log and the

documents submitted in camera. In particular, the memorandum at SiemensPriv 0765 is privileged only in that portion marked for redaction, even though the privilege log does not reference redactions. The privilege log contains an entry for SiemensPriv 0790.002, but the documents submitted in camera do not include this document. Instead, the documents in camera include SiemensPriv 0790.001-006 (as the first page in a three-page email chain), Siemens Priv 0790.001-006-0002 (as the second page), and SiemensPriv 079.001-006-0003 (as the third page). These documents, in any event, are correctly marked privileged.

In sum, plaintiff's motion to compel production of privileged documents will be granted in part and denied in part. Of the documents submitted for in camera review, defendants need only mark as not privileged and produce documents expressly referenced herein. All other documents marked privileged in the "Peter Petit" and "No Legal Individuals To/From" privilege log should remain privileged.[7]

To facilitate resolution of disputes regarding remaining documents subject to plaintiff's motion to compel, which were not submitted for in camera review, the court DIRECTS defendants to re-review such disputed documents and to designate as not privileged any documents meeting the description or criteria set forth herein for non-privileged documents. The parties shall then submit a joint status report to the court on any additional documents remaining in dispute in light of the present ruling.

## CONCLUSION

Based on the foregoing, plaintiff's motion to strike defendant's amended invalidity contentions (DE 297) is GRANTED IN PART and DENIED IN PART. In particular, plaintiff's

---

[7] For convenience of the parties, the court lists, in Appendix A to this order, the documents determined herein to be not privileged.

motion to strike defendants' invalidity contentions based on parent applications is DENIED, whereas plaintiff's motion to strike defendants' invalidity contentions based upon the HSF 2100 and HSF 3100 disc filters, as specified herein, is GRANTED. Defendants' related motion to amend invalidity contentions (DE 320) is DENIED.

In addition, Plaintiff's motion to compel production of documents withheld as privileged (DE 274), is GRANTED IN PART and DENIED IN PART, as set forth herein. Defendants are DIRECTED to produce within **14 days** of the date of this order those documents, or portions thereof, specified in Appendix A hereto. Further, defendants are DIRECTED to re-review privilege designations and make further production on the basis of this order, within **14 days** of the date of this order, and the parties are DIRECTED to submit a joint report on any remaining disputes over privilege designations, within **21 days** of the date of this order.

SO ORDERED, this the 25th day of November, 2014.

LOUISE W. FLANAGAN
United States District Judge

# APPENDIX A

## Documents Not Privileged

1. SiemensPriv 0048.001
2. SiemensPriv 0048.002
3. SiemensPriv 0048.004
4. SiemensPriv 0286.003
5. SiemensPriv 0374.002
6. SiemensPriv 0559.002
7. SiemensPriv 0759
8. SiemensPriv 0796-0029 through 0796-0052
9. SiemensPriv 0751
10. SiemensPriv 0025.004
11. SiemensPriv 0025.005
12. SiemensPriv 0520-0003 (redacted portion on this page only)
13. SiemensPriv 0520.002
14. SiemensPriv 0520.003
15. SiemensPriv 0521.001
16. SiemensPriv 0522
17. SiemensPriv 0604.001 (except for the sentence following the words "Plan B")
18. SiemensPriv 0647.003
19. SiemensPriv 0755
20. SiemensPriv 0758